IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAVIER MURILLO GURROLA,<br><br>                Plaintiff,<br><br>    vs.<br><br>TYSON FRESH MEATS, INC.,<br><br>               Defendant. | 8:13CV312<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiff's motion for partial summary judgment (Filing No. 35) and defendant's motion for summary judgment, (Filing No. 38). In his complaint, the plaintiff asserted claims against his employer, Tyson Fresh Meats, Inc. (hereinafter Tyson), alleging retaliation for (a) asserting his right to change his choice of doctor under the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-120(2), and for (b) retaining an attorney to assist him in handling his workers' compensation claims. Filing No. 1-1. The plaintiff seeks "monetary relief including but not limited to back pay, front pay, compensatory and punitive damages." Filing No. 1-1.

After the plaintiff filed a lawsuit in state court, the defendant filed a notice of removal, based on diversity jurisdiction, and had the case removed from the District Court of Dawson County, Nebraska to the United States District Court for the District of Nebraska. Filing No. 1; 28 U.S.C. § 1332. The United States District Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States . . ." 28 U.S.C. § 1332. The plaintiff is a resident of Nebraska and the defendant is a Delaware corporation with its principle place of business in Arkansas.

Filing No. 1-1. Magistrate Judge Thalken previously determined that the defendant provided sufficient evidence to establish the amount in controversy in this case. Filing No. 12. The parties did not object to the finding and the Court affirmed the magistrate judge. Filing No. 14. Thus, the Court finds both diversity jurisdiction and amount in controversy exist in this case.

### I. BACKGROUND

This case arises out of the employment relationship between the parties. Filing No. 1-1. The defendant, who operates a meat packing plant in Lexington, Nebraska, employed the plaintiff from September 2010, until his termination in May 2013. Filing No. 39, at ECF p.3. Plaintiff reported at least five work-related injuries during his employment at Tyson, the first of which occurred in October 2010. Filing No. 39, at ECF p.5. The injuries specific to this case include, an injury to his left wrist, an injury to his right wrist, and a groin injury/hernia. Filing No. 37; Filing No. 39.

The plaintiff first reported problems with his left wrist to Tyson on or about May 31, 2012 and Tyson placed him on restricted duty. Filing No. 37, at ECF p.4. The plaintiff reported problems with his groin/hernia to Tyson on or about February 6, 2013. Filing No. 39, at ECF p.6. The plaintiff reported right wrist pain to Tyson on or about February 28, 2013. *Id.* Tyson treated all three injuries as work-related. *Id.* Tyson provided the plaintiff with a choice of doctor form for each of the three injuries.[1] Filing No. 39, at ECF p.7. The plaintiff initially selected his family physician, Dr. Pat Unterseher as the treating physician for his left hand injury. Filing No. 42-2. Dr.

---

[1] Nebraska Workers' Compensation Court Form 50: Employee's Choice or Change of Doctor Form.

Unterseher referred the plaintiff to Dr. E. Scott Carroll, a hand specialist. Filing No. 39, at ECF p.7. For the right wrist, the plaintiff designated Dr. Carroll as the treating doctor. Filing No. 42-2. For his groin injury, the plaintiff designated Dr. Kerrey Buser as the treating doctor. Filing No. 42-2.

Dr. Carroll treated the plaintiff for his wrist pain and placed him on restricted duty. Filing No. 37, at ECF p.4. Dr. Carroll recommended carpal tunnel surgery to correct the left wrist injury, but the plaintiff refused surgery. Filing No. 37, at ECF pp.5-6. The plaintiff returned to work in November 2012. *Id.* The plaintiff started developing right wrist pain while he was on restricted duty from the left wrist pain. *Id.* Dr. Carroll treated the plaintiff for both wrist injuries on March 14, 2013, and restricted the plaintiff from using either his right or left hands. *Id.* The plaintiff, through his attorney, advised Tyson that he had chosen a different doctor, Dr. McCarthy to perform the left hand surgery. Filing No. 42-4. Tyson agreed to the change of doctor and attempted to schedule an appointment for the plaintiff to see Dr. McCarthy. Filing No. 42-5. After Dr. McCarthy declined to treat the plaintiff, he chose Dr. Dan Cullan to perform the left hand surgery. Filing No. 39, at ECF p.8. Again, Tyson agreed to the change of doctor and authorized Dr. Cullan to perform surgery. Filing No. 42-6. Dr. Cullan performed surgery on the left wrist on May 13, 2013. Filing No. 37, at ECF p.6. Dr. Cullan released the plaintiff to work with a five-pound restriction on his left hand on May 20, 2013. *Id.* Dr. Cullan did not place any restrictions on the plaintiff's right hand. *Id.*

Tyson granted the plaintiff a medical leave of absence for hernia surgery from March 27, 2013 through April 9, 2013. Filing No. 39. Tyson extended the leave through May 6, 2013, based on updated medical documentation provided by Dr. Buser. Filing

3

No. 44-6. Tyson extended the leave a second time through May 13, 2013, again based on updated medical documentation provided by Dr. Buser. Filing No. 44-7.

On May 8, 2013, Tyson's corporate computerized leave of absence monitoring system automatically issued a written reminder to the plaintiff advising him that his leave of absence was to expire on May 13, 2013, and that he needed to return to work on that day or submit updated medical documentation if he was unable to return to work. Filing No. 41-12. The plaintiff did not return to work or provide any updated medical documentation by May 13, 2013. Filing No. 39, at ECF p.17.

Tyson sent a letter to the plaintiff on May 14, 2013, one day after his medical leave of absence expired, informing the plaintiff that Tyson had not received medical documentation required to extend his leave. Filing No. 41-13. Although the plaintiff had failed to return to work and was in violation of Tyson's leave of absence policy, Tyson extended his authorized leave until May 21, 2013, giving the plaintiff five additional days to provide updated medical documentation. *Id.* Tyson told the plaintiff that if he did not provide medical documentation or contact Tyson to discuss his status by May 21, 2013, Tyson would terminate him. *Id.*

On May 15, 2013, Tyson's corporate computerized leave of absence monitoring system automatically issued a written reminder to the plaintiff advising him that his leave of absence was to expire on May 21, 2013 and that he needed to return to work on that day or submit updated medical documentation if he needed to extend his leave. Filing No. 41-14.

On May 17, 2013, the plaintiff took a handwritten letter to human resources stating that he had an upcoming doctor's appointment. Filing No. 43-1. The letter said

4

surgery was recommended for his right hand and that his next appointment was May 29, 2013. *Id.* The letter requested an extension of leave until June 5, 2013. *Id.* The letter did not include any medical documentation to support an extension of his medical leave of absence. *Id.* The plaintiff did not request use of vacation or personal leave even though his approved medical leave of absence was set to expire. *Id.*

On May 23, 2013, after the plaintiff's leave of absence had expired, Tyson received a facsimiled letter from Dr. Cullan, dated May 8, 2013, indicating that the plaintiff needed to be off work from May 13, 2013 until May 20, 2013, due to right carpal tunnel surgery. [Filing No. 42-9](). This letter indicated that the plaintiff could return to work on May 20, 2013 with restricted use of his left hand. *Id.* Tyson sent a letter on May 28, 2013, via facsimile, to the plaintiff's attorney stating that the plaintiff failed to return to work on May 20, 2013. [Filing No. 42-10](). The letter stated that the plaintiff needed to report to health services for job placement. *Id.*

By May 29, 2013, the plaintiff had accumulated more than fourteen attendance points based in part on his unexcused absences since May 21, 2013. [Filing No. 39, at ECF pp.20-21](). Because the plaintiff had failed to return to work and failed to provide medical documentation to support an extension of his leave, Tyson terminated the plaintiff. [Filing No. 39, at ECF p.21](). On June 4, 2013, Tyson sent a final letter to the plaintiff explaining that his leave had expired on May 21, 2013 and that he had failed to return to work or provide updated medical information for an extension of leave. [Filing No. 41-16](). Tyson stated that if there was a valid reason or special circumstances that had prevented the plaintiff from returning to work or providing medical documentation that the plaintiff needed to call Tyson to discuss it. *Id.* After June 4, 2013, the plaintiff

5

did not contact Tyson to discuss the termination notices. Filing No. 46-1, at ECF p.80. The plaintiff's attorney contacted Tyson, via email, telling Tyson to reinstate the plaintiff based on the handwritten letter he had provided which extended his leave until June 5. Filing No. 45-1. This email did not contain any updated medical documentation supporting an extension of the plaintiff's medical leave of absence beyond May 21, 2013. *Id.*

Additionally on May 30, 2013, the plaintiff filed a motion to change doctors in the Nebraska Workers' Compensation Court. Filing No. 36-21. An email offered by the plaintiff, indicates that Tyson did not receive notice of the hearing on the motion to change doctor until June 3, 2013. Filing No. 42-12.

The plaintiff alleges Tyson retaliated against him for requesting a change of doctor and for retaining an attorney to assist him in handling his workers' compensation claim. Filing No. 1-1. The plaintiff offers no evidence indicating that Tyson fired him for choosing a different doctor or for hiring an attorney to represent him. Additionally, the plaintiff alleges other employees, who did not choose a different doctor or hire an attorney, received extended leave. Filing No. 1-1. The plaintiff offers no evidence of other employees whose leave was extended, absent documented medical records. The plaintiff asserts that the defendant's stated reason for terminating him, i.e., failure to return to work or provide updated medical documentation in support of an extension of his medical leave, was pretextual. *Id.* The plaintiff alleges his status as an injured worker was a motivating factor for the defendant terminating him. Filing No. 1-1. The defendant denies any liability. Filing No. 10.

The plaintiff filed a motion for partial summary judgment specific to the defendant's affirmative defenses asserting (1) the plaintiff failed to state a claim, (2) the defendant acted in good faith at all times, (3) the plaintiff's claim is barred by laches, unclean hands, waiver and estoppel and (4) that the plaintiff failed to mitigate damages. Filing No. 35. The defendant filed a motion for summary judgment requesting dismissal of all of the plaintiff's claims. Filing No. 38.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323).

If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id*.

(quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

### III.    DISCUSSION

The plaintiff claims that Tyson retaliated against him for asserting his rights under the Nebraska Workers' Compensation Act, specifically for requesting a change of doctor and for retaining an attorney to assist him in handling his claims. Filing No. 1-1. Tyson counters they had a legitimate, nondiscriminatory and nonretaliatory reason for terminating the plaintiff's employment. Filing No. 10.

### (a) The plaintiff's Prima Facie Case

"To establish a prima facie case of unlawful retaliation based on the filing of a workers' compensation claim, an employee must show that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action." *Mawhiney v. Warren Distribution, Inc., No.* 805CV466, 2007 WL 1703331, at *11 (D. Neb. June 11, 2007) (quoting *Riesen v. Irwin Indus. Tool Co.*, 717 N.W.2d 907 (Neb.2006)). "The burden of proof for a prima facie case of retaliatory discharge for filing a workers' compensation claim is on the employee." *Riesen v. Irwin Indus. Tool Co.,* 717 N.W.2d 907, 915 (Neb. 2006).

There is no dispute that that the plaintiff satisfied the first two elements of a prima facie case; however, a causal connection between the protected activity and the adverse action is not supported by the evidence. The plaintiff filed a workers' compensation claim arising from injuries sustained in the course and scope of his employment, therefore establishing that he participated in a protected activity. *Riesen,* 717 N.W.2d at 915. Second, the employer took adverse action against him by terminating his employment on May 30, 2013. *Id.* Viewing the evidence in a light most favorable to the plaintiff, he fails to establish the causal connection between the protected activity and the adverse employment action, as set forth below.

"Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as its motive." *Riesen,* 717 N.W.2d at 914. Proximity in time between the claim and the discharge is the typical beginning point used to establish proof of a causal connection.

9

*Id.* at 916. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close*.*" *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

The plaintiff's first claim, that Tyson retaliated against him for requesting a change of doctor, fails to establish the temporal proximity proving a causal connection. Tyson terminated the plaintiff on May 30, 2013. Filing No. 10. Additionally on May 30, 2013, the plaintiff filed a motion to change doctors in the Nebraska Workers' Compensation Court. Filing No. 36-21. An email offered by the plaintiff, indicates that Tyson did not receive notice of the hearing on the motion to change doctor until June 3, 2013. Filing No. 42-12. As such, Tyson argued it was unaware that the plaintiff filed a motion to change doctors prior to terminating the plaintiff on May 30, 2013. Filing No. 39. The Court finds the plaintiff has failed to establish a prima facie case because the plaintiff cannot establish the causal connection between filing the motion to change doctors and the adverse employment action. Additionally, the Court notes that on numerous occasions Tyson granted permission to the plaintiff to change his doctor. Further, there is no evidence offered by plaintiff whatsoever that this request to change doctors is related to Tyson's termination of the plaintiff. It is a conclusory statement at most.

The plaintiff's second claim, that Tyson retaliated against him for hiring an attorney to assist him in handling his workers' compensation claims, also fails to establish a close temporal proximity. The plaintiff hired his attorney on or about March

25, 2013. Filing No. 1-1. Although the courts have been reluctant to establish a specific length of time between the protected activity and the adverse action, they have determined that a time of two months was too long to satisfy the necessary temporal proximity. *Kipp v. Missouri Hwy. and Transp. Commn.*, 280 F.3d 893 (8th Cir. 2002). In this case, Tyson terminated the plaintiff approximately two months after he had hired his attorney; therefore, the causal link necessary to establish a prima facie case is not satisfied. The Court finds the plaintiff has failed to establish a prima facie case, because the plaintiff cannot establish the causal connection between hiring an attorney to assist in his workers' compensation claims and the adverse employment action. Further, there is no evidence offered by the plaintiff whatsoever that plaintiff's hiring counsel is related to Tyson's termination of the plaintiff. As stated above, it is a conclusory statement at most. The evidence shows clearly that the plaintiff failed to provide the required medical evidence to Tyson to extend his leave.

**(b) Tyson's justification for discharge**

In the alternative, however, the Court will assume the plaintiff properly established a prima facie case, and the burden then shifts to Tyson to articulate some legitimate, nondiscriminatory reason for the discharge from employment. *Riesen v. Irwin Indus. Tool Co.*, 717 N.W.2d 907, 914 (Neb. 2006). Tyson states the reason for terminating the plaintiff's employment is because he failed to return to work or provide updated medical documentation in support of a request to extend his medical leave of absence as required by their policy. Filing No. 39, at ECF p.1. Tyson sent multiple letters to the plaintiff regarding when his leave would expire and what steps he needed

11

to take to extend his leave.  *Id.*  Each time Tyson extended the plaintiff's leave, Tyson sent a new letter to the plaintiff stating the new expiration date.  *Id.*

On May 8, 2013, Tyson's corporate computerized leave of absence monitoring system automatically issued a written reminder to the plaintiff advising him that his leave of absence was to expire on May 13, 2013 and that he needed to return to work on that day or submit updated medical documentation if he was unable to return to work.  Filing No. 41-12.  The plaintiff did not return to work or provide any updated medical documentation by May 13, 2013.  Filing No. 39, at ECF p.17.

Tyson sent a letter to the plaintiff on May 14, 2013, one day after his medical leave of absence expired, informing the plaintiff that Tyson had not received any documentation to extend his leave or return to work.  Filing No. 41-13.  Although the plaintiff had failed to return to work and was already in violation of Tyson's leave of absence policy for failing to return on May 13, 2013, Tyson extended his authorized leave until May 21, 2013 giving the plaintiff five additional days to provide updated medical documentation.  *Id.*  Tyson told the plaintiff that if he did not provide medical documentation or contact Tyson to discuss his current status by May 21, 2013 Tyson would terminate him.  *Id.*

On May 15, 2013, Tyson's corporate computerized leave of absence monitoring system automatically issued a written reminder to the plaintiff advising him that his leave of absence was to expire on May 21, 2013 and that he needed to return to work on that day or submit updated medical documentation.  Filing No. 41-14.

On May 17, 2013, the plaintiff took a handwritten letter to human resources stating that he had an upcoming doctor's appointment.  Filing No. 43-1.  The letter

stated that surgery was recommended for his right hand and that his next appointment was May 29, 2013. *Id*. The letter requested an extension of leave until June 5, 2013, however, it did not include any medical documentation to support an extension of the plaintiff's medical leave of absence. *Id*.

On May 23, 2013, after the plaintiff's leave of absence had expired, Tyson received a facsimiled letter from Dr. Cullan, dated May 8, 2013, indicating that the plaintiff needed to be off work from May 13, 2013 until May 20, 2013 because of carpal tunnel surgery. Filing No. 42-9. This letter indicated that the plaintiff could return to work on May 20, 2013 with restricted use of his left hand. *Id*. On May 28, 2013, Tyson sent a letter, via facsimile, to the plaintiff's attorney stating that the plaintiff was supposed to have returned to work on May 20, 2013 but that he had not. Filing No. 42-10. The letter further explained that the plaintiff needed to report to health services for job placement. *Id*.

By May 29, 2013, the plaintiff had accumulated more than fourteen attendance points based in part on his unexcused absences since May 21, 2013. Filing No. 39, at ECF pp.20-21. Because the plaintiff had failed to return to work and failed to provide medical documentation to support an extension of his leave, Tyson terminated the plaintiff. Filing No. 39, at ECF p.21. On June 4, 2013, Tyson sent a final letter to the plaintiff explaining that his leave had expired on May 21, 2013 and that he had failed to return to work or provide updated medical information for an extension of leave. Filing No. 41-16. Tyson stated that if there was a valid reason or special circumstances that had prevented the plaintiff from returning to work or providing medical documentation that the plaintiff needed to call Tyson to discuss it. *Id*. Neither the plaintiff, nor his

13

attorney, contacted Tyson to provide a valid reason or special circumstance that prevented plaintiff from returning to work or providing medical documentation. Filing No. 46-1, at ECF p.80; Filing No. 45-1. The evidence shows clearly that the plaintiff failed to provide the required medical evidence to Tyson to extend his leave.

### (c) Pretext

Once Tyson has successfully rebutted the plaintiff's prima facie case, the plaintiff must show that the company's explanation for firing him was merely pretextual. *Riesen*, 717 N.W.2d at 918. In employment law, a pretext "is a reason that the employer offers for the action claimed to be discriminatory and that the court disbelieves, allowing an inference that the employer is trying to conceal a discriminatory reason for his action." *Ryther v. KARE 11*, 108 F.3d 832, 838 (8th Cir. 1997). The plaintiff did not present any evidence showing that Tyson's explanations for firing him were pretextual. The Court finds that Tyson's reasons for firing the plaintiff, i.e., failure to return to work or provide updated medical documentation in support of an extension of his medical leave, are not pretextual. The evidence shows clearly that the plaintiff failed to provide the required medical evidence to Tyson to extend his leave.

Because the plaintiff failed to establish a prima facie case of unlawful retaliation based on (1) the filing of a workers' compensation claim, or (2) the hiring of legal counsel, and because Tyson articulated a legitimate and nondiscriminatory reason for terminating the plaintiff's employment, and since the plaintiff failed to prove pretext, this Court finds summary judgment for Tyson will be granted.

THEREFORE, IT IS ORDERED:

1. The defendant Tyson's motion for summary judgment, Filing No. 38, is granted.

2. The plaintiff's motion for partial summary judgment, Filing No. 35, is denied.

3. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 8th day of April, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge